# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIRLEY ANN PERRY, | Case No. 1:12-cv-02089-SAB |
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL |
| v. | |
| ACTING COMMISSIONER OF SOCIAL SECURITY, | (ECF Nos. 13, 14, 15) |
| Defendant. | |

## I.

## INTRODUCTION

Plaintiff Shirley Ann Perry ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from fibromyalgia, degenerative disc disease, obesity, and an unresolved ankle injury. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 9, 10.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 23, 2009. (AR 136-142.) Plaintiff's application was initially denied on May 14, 2009, and denied upon reconsideration on September 14, 2009. (AR 71-73, 74-75.) Plaintiff requested and received a hearing before Administrative Law Judge James P. Berry, ("the ALJ"). Plaintiff appeared for a hearing on March 16, 2011. (AR 36-62.) On April 20, 2011, the ALJ found that Plaintiff was not disabled. (AR 18-29.) The Appeals Council denied Plaintiff's request for review on October 25, 2012. (AR 1-4.)

**A. Hearing Testimony**

1. Plaintiff's Testimony

Plaintiff testified at the hearing on March 16, 2011. (AR 40-56.) On the date of the hearing, Plaintiff was fifty years old. (AR 40.) Plaintiff has the equivalent of an eighth grade education and did not receive a high school diploma or GED. (AR 40.) Plaintiff received on the job training for her housekeeping position. (AR 41.) Plaintiff has a nurse's aide certificate for her caregiver position. (AR 41.) Plaintiff last worked as a caregiver in April of 2008. (AR 41.) In this position, Plaintiff worked as a housekeeper and assisted her client with bathing, errands, and cooking. (AR 41.) In this job, Plaintiff had to lift more than twenty-five pounds. (AR 41.) Plaintiff worked as a caregiver for a total of nine years. (AR 42.) In the last fifteen years, Plaintiff also worked as a housekeeper in hotels and in private homes. (AR 42.)

Plaintiff was injured at work on September 13, 2007. (AR 42.) Plaintiff slipped down stairs, falling on her back and twisting her ankle. (AR 42.) Plaintiff worked full time until April of 2008. (AR 41, 42.) Plaintiff stopped working because she had a lot of pain and swelling in her right leg. (AR 43.) Plaintiff also has pain in her back, neck, hips, and both knees. (AR 43, 44.) Plaintiff has constant pain in her upper, middle, and lower back. (AR 44.) Sitting makes the pain worse and bending is difficult for Plaintiff. (AR 44.) Plaintiff's back also bothers her when she walks and stands. (AR 44.) Plaintiff takes pain medication that somewhat helps the pain. (AR

44.) Plaintiff uses an icepack on her lower back each day to help the pain. (AR 45.) Plaintiff is most comfortable when she is lying down, shifting from side to side. (AR 45.) Plaintiff lies down or reclines a couple hours a day. (AR 45.) Plaintiff has a constant, burning pain in her neck regardless of how she positions her head. (AR 45-46.) Plaintiff has constant throbbing pain in her knees. (AR 46.) Walking, using stairs, and sitting with her knees bent makes the pain worse. (AR 46.) Plaintiff's knees feel better when they are kept straight. (AR 47.) Plaintiff has to elevate her legs during the day to help with the swelling. (AR 47.)

At the time of the hearing, Plaintiff was wearing a boot on her right foot which she had for approximately one week. (AR 43.) Plaintiff has a torn tendon in the arch of her right foot. (AR 43.) Prior to wearing the boot, Plaintiff wore a support stocking and a full boot. (AR 43.) Plaintiff had to stop wearing the full boot after a couple days because it bothered her right knee and hip. (AR 44.)

Plaintiff has fibromyalgia. (AR 52.) Plaintiff experiences a lot of pain all over her body and has trouble lifting things. (AR 52.) Plaintiff also has pain and discomfort from a complete hysterectomy she had in November of 2008. (AR 53.) Plaintiff has to sit down and reposition a lot, and also has to urinate about every thirty minutes. (AR 53.) Plaintiff has a prescription for a cane, but has not had the prescription filled. (AR 53.) Plaintiff feels unstable when walking or standing. (AR 54.) Plaintiff fell down the stairs in her home in 2007. (AR 54.)

Plaintiff lives with her husband, two adult children, and her mother. (AR 47.) Plaintiff's children are twenty-eight and twenty-one. (AR 47.) Plaintiff's husband is permanently disabled. (AR 47.) Plaintiff assists her mother with her insulin and medication. (AR 48.) Plaintiff's husband does all of the laundry, washes the dishes, cooks, and cleans the house. (AR 48.) Plaintiff's daughter assists her with deep cleaning. (AR 48.) Plaintiff can cook, put laundry away, and help straighten up the house. (AR 48.) Plaintiff has some ability to vacuum her house. (AR 48.)

Plaintiff is able to drive but has problems with her right leg and right foot. (AR 48-49.) Plaintiff's husband or daughter drive her around. (AR 49.) Plaintiff goes grocery shopping once

a week and attends church every Sunday.  (AR 49.)  Plaintiff can no longer participate in her hobbies, which were painting ceramics, going to garage sales, gardening, and keeping her home clean.  (AR 49-50.)  Plaintiff can no longer paint ceramics because it requires long periods of sitting and her hands get achy and numb.  (AR 50.)

Plaintiff is five foot, four inches tall and weighs two-hundred and thirty pounds.  (AR 51.)  Plaintiff's normal weight is about one hundred ninety to two hundred pounds.  (AR 51.)  About three years ago, Plaintiff gained weight because she quit smoking after thirty-three years and is not as active as she used to be.  (AR 51.)  Plaintiff experiences upset stomach and nausea from her pain medication.  (AR 51.)

Plaintiff feels she cannot return to work because she cannot stay on task due to severe pain and forgetfulness.  (AR 50-51.)  Plaintiff does not push herself because she would be in a lot of pain.  (AR 50.)  Plaintiff is able to sit thirty minutes before she needs to stand.  (AR 51.)  Plaintiff is able to stand for fifteen to twenty minutes before she needs to sit and take a break.  (AR 51.)  Plaintiff can walk about a half a block at a time.  (AR 52.)  Plaintiff can comfortably lift her purse and two gallons of milk, one in each hand.  (AR 52.)  Plaintiff estimates she could only stand for thirty minutes in an eight hour period.  (AR 54-55.)  Plaintiff could do fifteen minutes of walking over an eight hour period.  (AR 55.)  Plaintiff could sit for a total of thirty minutes over an eight hour period.  (AR 56.)

2. <u>Vocational Expert Testimony</u>

Mr. Chaparro, a vocational expert ("VE") testified at the hearing.  (AR 57-61.)  The VE classified Plaintiff's home attendant job as medium, semiskilled work.  (AR 57.)  The VE classified Plaintiff's prior housekeeping work experience as light and unskilled, and her caretaker position as medium and unskilled work.  (AR 57-58.)

The VE was presented with a hypothetical of an individual of Plaintiff's age, education, and work experience; with a combination of severe impairments; retains the ability to stand, walk, and sit six hours each; can occasionally climb ropes, ladders, scaffolds, crouch, and crawl.  (AR 58.)  The individual retains residual functional capacity to lift and carry twenty pounds

4

occasionally and ten pounds frequently. (AR 58.) The VE opined that this individual could work as a housekeeping cleaner, but could not perform any of the Plaintiff's other past relevant work. (AR 58.) The VE stated that there were other jobs that could be performed by this hypothetical individual, such as a fast-food worker (DOT 311.472-010, with 2 million jobs nationally and 192,000 statewide); a cashier (DOT 211.462-010, with 1,728,000 jobs nationally and 176,000 statewide); and a cafeteria attendant (DOT 311.677-010, 138,000 jobs nationally and 20,500 statewide). (AR 58-59.) The VE also opined that if the hypothetical individual used a cane, the individual's ability to perform the three aforementioned jobs would not be affected because the cane would leave the individual with one free hand. (AR 60.)

The VE was presented with a second hypothetical of an individual with the same vocational parameters and combination of severe impairments who retains the functional residual capacity to lift and carry approximately sixteen pounds; can sit thirty minutes maximum and one hour total, stand thirty minutes maximum, and walk fifteen minutes maximum; has difficulty maintaining attention, concentration, persistence, and pace; would need unscheduled work breaks daily lasting approximately two hours to elevate lower extremities; and must have option to change positions at will. (AR 59.) The VE opined that an individual with such limitations would not be able to perform any of Plaintiff's past work. (AR 59.) The VE also opined that there would be no jobs available in the national economy for an individual with these limitations. (AR 59.)

**B. ALJ Findings**

The ALJ found that Plaintiff had not been under a disability within the meaning of the Social Security Act from February 2008, through the day of decision, April 20, 2011. (AR 20.) Specifically, the ALJ found that the claimant has the following severe impairments: degenerative disc disease and obesity. (AR 22.) The claimant's right foot tendon tear is medically determinable, but not severe and has minimal effect on the claimant's ability to do work. (AR 22.) Plaintiff's impairment or combination of impairments do not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (AR 22.)

The ALJ found that Plaintiff has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and sit, stand and walk 6 hours in an 8-hour workday. (AR 23.) Plaintiff's impairments limit her to occasionally climbing ropes, ladders, and scaffolds, and occasionally crouching and crawling. (AR 23.)

The ALJ found Plaintiff is not entirely credible. (AR 26.) Plaintiff stated she has difficulties lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs, seeing, understanding, getting along with others, completing tasks, concentrating and has problems with her memory. (AR 26.) Such severe pain and limitations are not supported by the objective medical evidence. (AR 26.) Plaintiff's treating physical noted she was unhappy with her work situation and demonstrated no intent to return to her job. (AR 26.) Plaintiff was offered a job by her former employer, which was approved by her doctor as appropriate based on her physical abilities. (AR 26.) After accepting the position, Plaintiff repeatedly failed to show up. (AR 26.) The ALJ found that these facts suggest that Plaintiff's current unemployment is not the result of medical problems. (AR 26.)

The ALJ considered Plaintiff's obesity and found that, while it conceivably contributed to her discomfort, evidence did not preclude work activities altogether and her treating physicians had released Plaintiff to return to light work. (AR 27.)

The ALJ found that Plaintiff is capable of performing past relevant work as a housekeeping cleaner. This work does not require the performance of work related activities precluded by Plaintiff's residual functional capacity. (AR 27.) In comparing Plaintiff's residual functional capacity with the physical and mental demands of this work, the ALJ found that Plaintiff is able to perform it as actually and generally performed. (AR 27.)

Additionally, the ALJ found that there are other jobs existing in the national economy that Plaintiff is able to perform. (AR 27.) Based on the testimony of the vocational expert, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as a fast food worker, cashier, or cafeteria attendant. (AR 28.)

## III.

## LEGAL STANDARD

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises six issues in this action: 1) whether the ALJ's step two finding was supported by the evidence in the record; 2) whether the ALJ erred by globally rejecting the opinions of Dr. Hansen, Dr. Carpenter, and physical therapist Wilson; 3) whether the ALJ erred by relying on the opinion of the state agency physician; 4) whether the ALJ had legally sufficient reasons for finding Plaintiff not fully credible; 5) whether the ALJ's errors were harmful; and 6)

whether benefits should be paid.  (Pl.'s Opening Brief 18, ECF No. 13.)

### A. Relevant Medical Record

On February 14, 2008, Plaintiff was seen by Dr. Hanson who indicated to her that he could see her for her foot problem, but they would need to evaluate x-rays at the next visit.  (AR 296-98.)  On February 27, 2008, Plaintiff was seen by Dr. Tran who noted that she was a chronic fibromyalgia patient.  He recommended medication which she refused to take.  Dr. Tran referred her to a rheumatologist.  He noted that Plaintiff had been advised by a Chiropractor to take it easy or take time off work.  Dr. Tran stated that "is a terrible idea.  She needs to stay active."  (AR 544.)

On March 3, 2008, Dr. Hanson noted mild tenderness about Plaintiff's ankle and mild tenderness over her third and fourth metatarsophalangeal joints.  Plaintiff had mild sensations of pain in her midfoot.  Radiographs of the foot indicated no fracture, dislocation, or other abnormality.  There was a small traction spur on the calcaneus.  (AR 299-300.)  Dr. Hanson noted that Plaintiff was unhappy with her current work situation and demonstrates no intent to return to her job although he wanted her to do light duty.  (AR 300.)  Plaintiff began physical therapy on March 4, 2008 for ankle and back pain.  (AR 219.)

On April 2, 2008, Plaintiff had a consultation with Dr. Jensen whose impression was fibromyalgia and spondylosis.  (AR 551, 606, 617-18.)  On April 8, 2008, a letter from Mr. Galt, Plaintiff's physical therapist, shows that Plaintiff was originally seen for treatment on her ankle that had resolved; and she continued to be treated for her back pain.  (AR 218.)  On April 28, 2008, Plaintiff was returned to light duty work by her attending physician.  (AR 257-58.)  Dr. Hanson agreed that Plaintiff should return to light duty work with reduced hours.  (AR 303.)  On May 14, 2008, nerve conduction studies on Plaintiff's ankles returned normal.  (AR 267-68.)

On July 7, 2008, Dr. Hansen completed a light duty check list indicating that Plaintiff was able to perform light duty with the limitation that she could not lift more than 10 pounds.  (AR 360-61.)  Plaintiff had a physical therapy evaluation for a functional capacity evaluation on August 4, 2008 by Mr. Wilson.  (ECF No. 328-39.)  Plaintiff was at a sedentary work level.  (AR

329, 363-79.)

On July 31, 2008, Plaintiff was seen by Dr. Troeh who indicated that she had been diagnosed with fibromyalgia and was taking medication that she found to be helpful. (AR 543.)

On August 9, 2008, Dr. Hanson agreed with the functional capacity evaluation and that Plaintiff was able to return to light duty work. (AR 362.) On September 29, 2008, Dr. Hanson notified the Department of Labor and Industries that he was no longer Plaintiff's treating physician. (AR 496.)

On November 12, 2008, Dr. Carpenter noted that Plaintiff's gait was normal without ataxia or limp. (AR 498.) On December 10, 2008, Plaintiff saw Dr. Carpenter, who was treating her for her spine complaints and he referred her to follow up with Dr. Chenault for evaluation of her ankle. (AR 497.)

On April 20, 2009, Dr. Troeh stated that he was increasing Plaintiff's medication for her fibromyalgia. (AR 636.) On April 30, 2009, Plaintiff was examined by Dr. Khamisani and Dr. Patterson. (AR 547-56.) Among other things, Plaintiff reported right foot pain and some ankle pain. (AR 549.) Plaintiff is noted to stand erect bearing weight equally bilaterially. She walks with normal stance, posture, and gait. She has difficulty walking on her toes secondary to foot pain. She is able to go in plantar flexon, but it hurts to walk. Heel walking is also painful on the right. She is able to squat down to full knee bend and get up from the position with no difficulty. (AR 552.) She had tenderness with vibration of the medial malleolus, dorsum of the right foot, with tenderness positive on the dorsum of the right foot. Tenderness seemed to be in the distribution of the superficial branch of the deep peroneal nerve on the right foot at the base of the second metatarsal bone. There was some tenderness in the tarsal tunnel area with plantar flexion of the big toe on the right. (AR 553.) Plaintiff was diagnosed with probable neuropraxia deep peroneal sensory branch dorsum right foot. (AR 554.) The report indicates that Plaintiff is able to return to light to sedentary level of work with no prolonged standing, walking, or weight bearing. (AR 555.) The report indicates that Plaintiff should return to an orthopedist that can perform injections into the affected region of her foot to relieve her symptoms. (AR 556.)

On January 9, 2009, Dr. Carpenter agreed that Plaintiff was able to perform the job duties described in the job analysis and was able to return to work. (AR 480-81.) On June 30, 2009, Dr. Troeh indicated that he was going to refer Plaintiff to an orthopedist for her foot and ankle. (AR 638.)

On January 6, 2010, Dr. Ossowski's notes indicate that Plaintiff complained that she had right foot weakness and was stumbling while walking. He prescribed a cane. (AR 667, 681, 682.) Dr. Ossowski prescribed opioids for Plaintiff's foot and ankle pain on April 21, 2010. (AR 678, 679.)

On May 6, 2010, Plaintiff was seen by Dr. Caton for her foot and ankle complaints. Dr. Caton noted that Plaintiff's MRI scan of the right foot showed an inflamed plantar bursa deep to the first metatarsal head with generalized nonspecific soft tissue swelling. An MRI of the right ankle showed a partial thickness tear of the distal tibialis, posterior tendon with mild tenosynovitis, mild plantar fasciitis, and marker generalized nonspecific subcutaneous soft tissue swelling. (AR 694.) Physical examination of Plaintiff's foot showed it was diffusely tender and painful. She was able to flex and extend the ankle 25 degrees of dorsiflexion and 25 degrees of plantar flexion. Inversion and eversion elicits some minimal complaints of pain. Dr. Caton found that Plaintiff only warrants conservative care at this time. Plaintiff was given a lace up ankle brace for support and some anti-inflammatory and pain cream. (AR 695.)

On June 24, 2010, Plaintiff was seen by Dr. Caton. (AR 690.) There was no specific area of tenderness, but the entire global portion of the foot bothered her. (AR 691.) Plaintiff stated that her medications did not work well for her in the past, but the anti-inflammatory and pain cream did some good. (AR 691.) On this same date, Dr. Ossowski noted that the opiates diminish Plaintiff's pain to 3 to 4. (AR 668.) On July 15, 2010, Dr. Ossowski's notes indicate that Plaintiff is still awaiting a cane. (AR 664.)

On November 10, 2010, Plaintiff was seen by Dr. Wolterbeck. His report indicates that there is no nerve entrapment or sign of a neuroma. The heel is tender and painful directly beneath the heel bone and there is some tenderness at the plantar fascia insertion. Dr. Wolterbeck put

10

Plaintiff in a Cam boot for 100% use to rest the soft tissue. (AR 687-88.) On February 16, 2011, Plaintiff was seen by Dr. Wolterbeck and indicated that she has pain everywhere in her foot. Plaintiff was to wear compression hose. (AR 689.) On March 7, 2011, Dr. Wolterbeck found that Plaintiff had tenderness in the tibial tendon area and into the plantar fascia. Plaintiff was put in a short book to rest the tendon. (AR 683-84.)

### B. Any ALJ Error at Step Two Was Harmless

Plaintiff contends that at Step Two of the evaluation procedure, the ALJ erred failing to consider Plaintiff's fibromyalgia, and in finding that Plaintiff's foot and ankle impairment was not severe. (ECF No. 13 at 19.) Defendant replies that the ALJ did properly address Plaintiff's fibromyalgia, and that the record is devoid of any evidence that fibromyalgia caused a significant limitation on Plaintiff's ability to work. (Reply Brief 6, ECF No. 14.) Defendant also contends that Plaintiff's foot injury was properly considered as it was an issue reserved to the Commissioner, and, therefore, the ALJ properly weighed it. (ECF No. 14 at 7.) Plaintiff replies that, while the ALJ did discuss Plaintiff's fibromyalgia, they did so briefly in Step Four in determining residual functional capacity, and erred in not discussing the fibromyalgia in Step Two. (Pl.'s Reply Brief 2, ECF No. 15.)

#### 1. Fibromyalgia

While Plaintiff contends that failing to discuss fibromyalgia at Step Two requires reversal, any such error would be harmless if the ALJ considered the limitations posed by Plaintiff's fibromyalgia. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007). In determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's fibromyalgia. The ALJ stated that Plaintiff was seen by Dr. Troeh for diffuse pain that referred her to a rheumatologist. (AR 23.) In April 2008, Plaintiff was examined for her musculoskeletal symptoms; and the rheumatologist, Dr. Jensen, noted moderate tenderness of the fibromyalgia tender points. (AR 23.) Plaintiff exhibited discomfort with rotation of the spine and laboratory work showed no abnormalities. (AR 23.) Plaintiff was diagnosed with fibromyalgia and spondylosis. (AR 23.) Plaintiff was provided with medication. (AR 23.) Plaintiff received four weeks of physical therapy treatment

with no improvement and was discharged.  (AR 23.)

The mere existence of an impairment is insufficient proof of a disability.  <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993.)  There are only limited mentions of fibromyalgia in the record and the ALJ did consider the record as it reflects Plaintiff's fibromyalgia. (AR 23.)  When applying for disability benefits it is the claimant's duty to prove that she is disabled.  42 U.S.C. § 423(c)(5)(A).

The record reflects that Plaintiff only saw a specialist for her fibromyalgia on one occasion.  The specialist prescribed medication and Dr. Troeh noted that the medication was helpful.  Further, when Plaintiff mentioned to Dr. Troeh that it had been suggested that she take it easy or take time off work, he noted that it would be a terrible idea as she needed to remain active.  Since the ALJ considered Plaintiff's fibromyalgia in her functional capacity assessment, any error in failing to address Plaintiff's fibromyalgia at Step Two was harmless.

2.  <u>Foot and Ankle</u>

Plaintiff claims that the ALJ erred by finding her foot and ankle problems were non-severe and failing to address Dr. Ossowski's opinion that Plaintiff needed a cane.  Defendants argue that Dr. Ossowski's opinion that Plaintiff was unable to work is properly reserved for the Commissioner and was also largely based on Plaintiff's objective complaints which the ALJ found not to be credible.

In discussing Plaintiff's residual functional capacity, the ALJ extensively discussed the treatment and opinions of Plaintiff's treating and examining physicians regarding Plaintiff's complaints of ankle pain.

Similarly, while Plaintiff claims error from failing to address the issue of Plaintiff needing a cane, the issue was addressed by the VE during the hearing.[2]  Contrary to Plaintiff's assertion, the VE testified that the use of a cane would not affect Plaintiff's ability to perform the three jobs.

EXAMINATION OF THE VOCATIONAL EXPERT BY THE ATTORNEY:

---

[2] The Court notes that although Dr. Ossowski had prescribed a cane more than a year earlier on January 6, 2010, as of the date of the hearing Plaintiff had not received, nor was she using, a cane.

> Q   If we took hypothetical number one and added use of a cane for - - well, for support and walking, would that have any effect on those types of positions?
> A   Those jobs, yes, it would.  She could not do those.  Excuse me, for standing or walking.  Oh, okay.
>     She needs it for balance.
> A   For balance, that means while she is on her feet, she's - - she only has the use of one hand.  Is that what - -
> Q   Yes.
> A   Okay. No.
> Q   I'm sorry.
> A   To those three jobs, no.
> Q   Okay.

(AR 60.)  Upon clarification of the question, the VE testified that use of a cane would not affect Plaintiff's ability to perform the three jobs.

Since the ALJ considered the limitations placed upon Plaintiff due to her foot and ankle pain, and Plaintiff's need to use a cane did not change the VE's opinion regarding those jobs which Plaintiff could perform, failing to address whether Plaintiff required a cane would be harmless error.

### C.   Adoption of Residual Functional Capacity Assessment

Plaintiff also contends that the ALJ did not give sufficient and specific reasons for rejecting the opinions of Drs. Hansen and Carpenter, failed to address the substance of these opinions, and never addressed the assessment of physical therapist Wilson.  (Pl.'s Opening Brief 24, ECF 13.)  Plaintiff asserts that the ALJ erred in relying on the opinion of the state agency physician because this opinion cannot be considered substantial evidence since it was the opinion of a nonexamining, nontreating physician.  (Pl.'s Opening Brief 24-25, ECF No. 13).

Defendant replies that the ALJ properly considered the physical therapist evaluations and gave them no weight because they addressed temporary disability and work restrictions, an issue reserved for the Commissioner.  (Reply Brief 9, ECF No. 14.)  Defendant replies that, pursuant to case law, the ALJ gave proper weight to the opinion of the state agency physician because the opinion was consistent with the treating physicians and is well supported by the record as a whole.  (Reply Brief 10, ECF No. 14.)

The weight to be given to medical opinions depends upon whether the opinion is proffered

13

by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general, a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

In determining Plaintiff's residual functional capacity, the ALJ considered 1) the treatment notes of Dr. Hansen and that he had released Plaintiff to work full-time, (AR 23-24); 2) Dr. Carpenter's treatment of Plaintiff's spinal condition, (AR 24); 3) Drs. Khamisaniand and Patterson's evaluation of Plaintiff for her industrial injury and their opinion that Plaintiff could work at the light to sedentary level of work activity (AR 24); 4) Plaintiff's functional capacity evaluation by Ms. Wilson (AR 24); 5) Plaintiff's treatment at the Stanislaus Orthopaedic and Sports Medicine Clinic (AR 25); 6) Dr. Ossowski's treatment regarding Plaintiff's foot and ankle problems and that Plaintiff needed a cane and had been unable to work since October 2009; and 7) Dr. Caton's treatment of Plaintiff (AR 25.)

Plaintiff's treating physicians held conflicting opinions on Plaintiff's ability to return to work. Dr. Hansen and Dr. Carpenter had released Plaintiff for light duty work. Dr. Ossowski opined that Plaintiff had been unable to work due to her foot and ankle problems since October 2009. "The treating physician's opinion is not [] necessarily conclusive as to either physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Further, where, as here, the medical evidence is conflicting, it is for the ALJ to determine credibility and resolve the conflict. Thomas, 278 F.3d at 956-57.

The ALJ gave little weight to the opinion of Dr. Ossowski because the issue of whether Plaintiff is disabled is reserved for the Commissioner. (AR 26.) Considerable weight was given to the opinion of the state agency regarding Plaintiff's physical impairments as they were

consistent with those of the treating physicians who released Plaintiff to return to work and the record as a whole. (AR 26.)

The ALJ adopted the physical residual functional capacity assessment prepared by Gail Fromdahl on May 13, 2009. (AR 557-64.) Ms. Fromdahl found that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; could stand or walk for a total of 6 hours in an 8 hour workday; could sit for 6 hours in an 8 hour workday; and her ability to push or pull was unlimited. (AR 558.) Plaintiff was able to climb ramps or stairs, balance, stoop, and kneel frequently; and climbs ropes ladders or scaffolds, crouch or crawl occasionally. (AR 559.) Plaintiff had no manipulative, visual, communicative or environmental limitations. (AR 560-61.) A case analysis was conducted by Dr. Robert Hoskins on September 14, 2009, and he affirmed the physical residual capacity assessment of May 13, 2009. (AR 63.)

The ALJ adopted the residual functional capacity assessment of Ms. Fromdahl, because it is consistent with those treating physicians who returned Plaintiff to work and the medical record as a whole. (AR 26.) While Plaintiff argues that Dr. Hansen and Dr. Carpenter adopted the limitation that Plaintiff could only lift ten pounds occasionally and sit for one half hour or one quarter hour at a time and stand for one half hour at a time, these were restrictions that were found by the physical therapist during the residual functional capacity assessment. (AR 364, 377.)

On August 4, 2008, Plaintiff had a functional capacity evaluation by Jill Wilson, Physical Therapist. (AR 363-377.) The assessment found that Plaintiff was at a sedentary work level and that Plaintiff was able to perform occasional lifting of 10 pounds at waist level, 5 pounds from the floor, and 12 pounds over head. Frequent lifting was not recommended due to Plaintiff's back injury. Plaintiff needed to have frequent changes of position throughout the day. (AR 364.) The report indicates that Plaintiff could sit for 4-6 hours in an 8 hour day; stand for 3-4 hours in an 8 hour day; walk for 1-2 hours in an 8 hour day; and alternately sit/stand/walk for 8 hours in an 8 hour day. Plaintiff could lift 8 to 12 pounds and carry 20 pounds occasionally. (AR 377.) The ALJ gave no weight to the opinions of Plaintiff's temporary disability and temporary work

restrictions because they addressed issued reserved for the Commissioner or were given for short periods of time and were replaced by permanent restrictions in the Worker's Compensation context. (AR 25.)

As time progressed, Dr. Hansen found that Plaintiff could able to bend from the knees and sit on the floor, climb two flights of stairs, sit for up to thirty minutes, reach above her head to perform household tasks, and was able to bed at the knees to perform light household chores. (AR 360-62.)  Dr. Carpenter found that Plaintiff could bend from the knees and sit on the floor, climb two flights of stairs, sit up to one hour at a time, reach above her head to perform light housekeeping tasks, could push a shopping cart, and lift groceries that did not exceed 10 pounds. (ECF No. 480.)  Both physicians released Plaintiff to return to work. (AR 362, 480-81.)  Drs. Khamisani and Patterson examined Plaintiff on April 30, 2009, and found that she could work at the light to sedentary level of work activity with no prolonged standing, walking, or weight bearing. (AR 555.)

There was no error as the opinion sets forth specific, legitimate reasons that are based on substantial evidence in the record for the residual functional capacity assessment adopted by the ALJ. Magallanes, 881 F.2d at 751.

### D. Plaintiff's Credibility

Plaintiff contends that the ALJ erred in finding Plaintiff not to be fully credible because the ALJ failed to make a finding of malingering, and did not make clear and specific findings in rejecting Plaintiff's complaints. (Pl.'s Opening Brief 26, ECF No. 13.)  Plaintiff also asserts finding as to credibility is inconsistent with the medical evidence. (Pl.'s Opening Brief 27, ECF No. 13.)  Defendant replies that the ALJ's credibility findings are supported by specific evidence in the record, mainly the Plaintiff's own statement and actions. (Reply Brief 11, ECF No. 14.)

Determining whether a claimant's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).  The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce

the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms.  Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008).  The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted).

Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors.  Lingenfelter, at 1040; Thomas, 278 F.3d at 958.

Dr. Hanson noted on March 3, 2008, that Plaintiff was unhappy with her current work situation and demonstrated no intent to return to her job although he wanted her to do light duty.  (AR 300.)  On April 28, 2008, Dr. Hanson agreed that Plaintiff should return to light duty work with reduced hours.  (AR 303.)  On June 5, 2008, Plaintiff again indicated to Dr. Hanson that she did not like her current position at work and felt uncomfortable when she goes to work due to ridicule in the workplace.  (AR 305.)

The November 21, 2008 and February 9, 2009, reports from the Department of Labor and Industry Board note that Plaintiff was found to be capable of sedentary work and was approved for the position of light duty home care aide.  (AR 342, 462.)  Plaintiff was offered a light duty

position which she indicated that she would accept, but "her actions were incongruent with what she had written on the offer letter." (AR 343.) Ms. Perry accepted the position but failed to attend the first day on the job. (AR 345-46, 458.) Plaintiff was offered the light duty position which was approved by her employer four times and failed to attend the first day of the job on each occasion. (AR 463, 466.) Vocation services were terminated as Plaintiff's actions showed that she did not wish to accept the offer of permanent employment. (AR 400, 460.)

Plaintiff was receiving conservative care by her medical providers and two of Plaintiff's doctors released her to return to work. Plaintiff was offered a fulltime light duty position. She accepted the position on four occasions and then each time failed to show up for the first day of employment. Plaintiff claims that her limitations due to pain are more severe than those found by these medical providers. However, the ALJ considered that Plaintiff's physicians had reviewed the physical requirements of the jobs she was being offered and had released Plaintiff to work. The ALJ also considered Plaintiff's comments and actions which indicated that her inability to work was due to her refusal to work, rather than the result of her medical conditions. In considering Plaintiff's credibility, the ALJ appropriately considered Plaintiff's statements and actions as inconsistent with the medical record and Plaintiff's testimony that her pain rendered her unable to work. Myers v. Colvin, 721 F.3d 521, 527-28 (8th Cir. 2013); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).

### E. ALJ Errors Are Harmless

Plaintiff also contends the ALJ's decision is harmful because there is a substantial likelihood the errors in the ALJ decision impact the finding of residual functional capacity. (Pl.'s Opening Brief 29-30, ECF No. 13.)

Where a claimant alleges that the ALJ failed to consider additional evidence, the harmless error rule applies. McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011). The reviewing court can determine from the "circumstances of the case" whether further administrative review is necessary to determine whether there was prejudice from the error." Id. Mere probability of error is not enough. McLeod, 640 F.3d at 888. "But where the circumstances of the case show a

substantial likelihood of prejudice, remand is appropriate so that the agency can decide whether re-consideration is necessary.  By contrast, where harmlessness is clear and not a borderline question, remand for reconsideration is not appropriate."  McLeod, 640 F.3d at 888 (internal punctuation and citations omitted).

As discussed above, any errors alleged by Plaintiff are harmless and remand is not appropriate.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's opinion is supported by substantial evidence and any error by the ALJ in determining that Plaintiff was not under a disability within the meaning of the Social Security Act was harmless.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Shirley Perry.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **February 21, 2014**

UNITED STATES MAGISTRATE JUDGE